UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No.  2:14-cv-00361-MCE-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| ROSEVILLE LODGE NO. 1293, LOYAL ORDER OF MOOSE, INCORPORATED, an unknown business entity d/b/a MOOSE LODGE 1293, | |
| Defendant. | |

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") asserts several causes of action against Defendant Roseville Lodge No. 1293, Loyal Order of Moose, Inc. ("Defendant") based on an unlawful interception and broadcast of a television program to which Plaintiff had the exclusive commercial distribution rights.  Pending before the Court are the parties' respective motions for summary judgment.  ECF Nos. 19, 20.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED, and Plaintiff's Motion for Summary Judgment (ECF No. 20) is GRANTED in part and DENIED in part.[1]

_____

[1]  Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

1

2

**BACKGROUND**[2]

3      Plaintiff had the exclusive nationwide distribution rights to "Ultimate Fighting

4  Championship 157:  Ronda Rousey v. Liz Carmouche," which aired on Saturday,

5  February 22, 2013 ("the Fight").  Plaintiff's rights to the Fight included non-residential

6  establishments such as Defendant's establishment and encompassed all undercard

7  events as well as the main event.[3]  Without the authorization of Plaintiff, Defendant

8  exhibited the Fight at its establishment in Roseville, California.

9      On the date of the Fight, Sherri Hokada visited Defendant's establishment.

10  Hokada, an investigator, observed that the Fight was broadcast on five of seven

11  televisions and that there were between fifty-seven and sixty-four patrons present.

12  Hokada estimated the capacity to be around two-hundred individuals.  Based on that

13  capacity, Plaintiff would have charged $1,600 to show the Fight in Defendant's

14  establishment.  Hokada also observed a satellite dish on the roof of the building.

15      Defendant does not dispute that it (1) showed the Fight, (2) had satellite

16  technology at its establishment, and (3) neither ordered the Fight nor paid Plaintiff a

17  licensing fee for it.  Def.'s Resp. to Pl.'s Statement of Undisputed Facts, ECF No. 23-1,

18  at 1-2.  However, Defendant contends that the maximum capacity of its establishment is

19  "between 80-100," a figure that, per Plaintiff's rate card, reduces the licensing fee that

20  Plaintiff would have charged for the Fight to $950.  Id. at 2.

21      Plaintiff's Complaint identifies the following causes of action:  (1) violation of

22  47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of

23  California Business and Professions Code § 17200.  Plaintiff seeks summary judgment

24  on the first, second, and third causes of action, and Defendant seeks summary judgment

25  on all four causes of action.

26      [2] The following statement of facts is based on the allegations in Plaintiff's Motion for Summary
27  Judgment.  ECF No. 20.

      [3] Defendant disputes that Plaintiff's rights extended to distribution in non-residential
28  establishments.

2

1

2

**STANDARD**

3      The Federal Rules of Civil Procedure provide for summary judgment when "the

4   movant shows that there is no genuine dispute as to any material fact and the movant is

5   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal

6   purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex

7   Corp. v. Catrett, 477 U.S. 317, 325 (1986).

8      In a summary judgment motion, the moving party always bears the initial

9   responsibility of informing the court of the basis for the motion and identifying the

10   portions in the record "which it believes demonstrate the absence of a genuine issue of

11   material fact."  Id. at 323.  If the moving party meets its initial responsibility, the burden

12   then shifts to the opposing party to establish that a genuine issue as to any material fact

13   actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

14   586-87 (1986).

15      In attempting to establish the existence or non-existence of a genuine factual

16   dispute, the party must support its assertion by "citing to particular parts of materials in

17   the record, including depositions, documents, electronically stored information,

18   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

19   not establish the absence or presence of a genuine dispute, or that an adverse party

20   cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

21   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

22   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

23   Inc., 477 U.S. 242, 248, 251-52 (1986).  The opposing party must also demonstrate that

24   the dispute about a material fact "is 'genuine,' that is, [] the evidence is such that a

25   reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  In other

26   words, the judge needs to answer the preliminary question before the evidence is left to

27   the jury of "not whether there is literally no evidence, but whether there is any upon

28   which a jury could properly proceed to find a verdict for the party producing it, upon

1   whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v. Munson,

2   81 U.S. 442, 448 (1871)) (emphasis in original).  As the Supreme Court explained:

3   "When the moving party has carried its burden under Rule [56(a)], its opponent must do

4   more than simply show that there is some metaphysical doubt as to the material facts."

5   Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not

6   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

7   trial.'" Id. at 587.

8        In resolving a summary judgment motion, the evidence of the opposing party is to

9   be believed, and all reasonable inferences that may be drawn from the facts placed

10  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

11  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

12  obligation to produce a factual predicate from which the inference may be drawn.

13  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

14  810 F.2d 898 (9th Cir. 1987).

15

16                                   **ANALYSIS**

17

18        Both Plaintiff and Defendant advance several arguments in the pending motions.

19  The Court will examine each Motion in turn and address only the arguments that the

20  Court finds dispositive.

21        **A.  Plaintiff's Motion for Summary Judgment**

22             **1.  First Cause of Action:  47 U.S.C. § 605**

23                  **a.  Entitlement to Summary Judgment**

24        As the moving party, Plaintiff bears the initial burden of informing the Court of the

25  basis of its Motion and identifying the portions of the record that Plaintiff believes

26  demonstrate the absence of a genuine issue of material fact.  Plaintiff's Motion

27  accomplishes these objectives with respect to the first cause of action.

28  ///

1       Section 605(a) provides:  "No person not being authorized by the sender shall

2  intercept any radio communication and divulge or publish the existence, contents,

3  substance, purport, effect, or meaning of such intercepted communication to any

4  person."  47 U.S.C. § 605(a).  More simply, the statute "prohibits commercial

5  establishments from intercepting and broadcasting to its patrons satellite cable

6  programming."  Kingvision Pay-Per-View v. Guzman, No. C09-00217, 2009 WL

7  1475722, at *2 (N.D. Cal. May 27, 2009).  Although § 605 did not originally address

8  television signal piracy, "amendments made to the statute in the 1980's extended [its]

9  reach to the unauthorized reception or interception of television programming."  DirecTV,

10  Inc. v. Webb, 545 F.3d 837, 843 (9th Cir. 2008).  Furthermore, while damages under

11  § 605 may be reduced if "it is later found that defendant acted unknowingly," a

12  defendant's willful violation is irrelevant "in determining liability."  Joe Hand Promotions,

13  Inc. v. Albright, CIV. 2:11-2260 WBS CMK, 2013 WL 2449500, *4 (E.D. Cal. June 5,

14  2013).

15       Here, Plaintiff has produced sufficient evidence to show that Defendant violated

16  § 605 by intercepting a satellite broadcast of the Fight.  Plaintiff has established that it

17  had the exclusive commercial distribution rights to the Fight.  Pl.'s Decl. (Ex. 1), ECF

18  No. 11, at 4-19.  Plaintiff also established that it entered into sub-licensing agreements

19  with various establishments, including establishments such as Defendant's, to permit the

20  public exhibition of the Fight.  Id. at 1-3.  Plaintiff further established—and Defendant

21  does not dispute—that Defendant showed the Fight without paying the licensing fee or

22  receiving authorization from Plaintiff.  Def.'s Resp. to Req. for Admis. (Nos. 1, 3), ECF

23  No. 20-3.  Defendant also conceded that it has satellite service at its establishment.  The

24  undisputed evidence—specifically, the lack of Plaintiff's authorization and the satellite

25  service at Defendant's establishment—is sufficient to establish Defendant's

26  unauthorized interception of the Fight via satellite service.  See Webb, 545 F.3d at 844

27  ("direct evidence of signal piracy is not required to prove unlawful interception"); Albright,

28  2013 WL 2449500 at *5 (granting summary judgment on a § 605 claim and explaining

1    that exhibition of a program at an establishment with an antenna and satellite dish leads

2    to the "reasonable inference . . . that the Program was intercepted via satellite service").

3         The burden therefore shifts to Defendant to controvert Plaintiff's circumstantial

4    evidence and establish that a genuine issue as to any material fact actually does exist.

5    Zenith Radio Corp., 475 U.S. at 586-87.  Defendant, however, has failed to establish the

6    existence of a genuine issue of material fact.  First, Defendant concedes that it showed

7    the Fight without Plaintiff's authorization.  Second, Defendant has not offered any

8    evidence to indicate that the Fight was received through some other method; and, again,

9    Defendant admitted having satellite technology at its establishment on the date of the

10   Fight.  Def.'s Resp. to Admis. (No. 11), ECF No. 20-3.  Because Defendant has failed to

11   establish the existence of a genuine issue as to Plaintiff's § 605 claim, Plaintiff's Motion

12   for Summary Judgment is GRANTED as to the first cause of action.

13                     **b.  Damages under 47 U.S.C. § 605**

14        The next issue is the amount of damages Plaintiff is entitled to for the § 605

15   violation.  "The party aggrieved may recover an award of statutory damages for each

16   violation of subsection (a) of this section involved in the action in a sum not less than

17   $1,000 or more than $10,000, as the court considers just."  47 U.S.C.

18   § 605(e)(3)(C)(i)(II).  "Courts in this circuit have granted widely varying awards ranging

19   from near the minimum statutory award of [$]1,000 to near the maximum of [$]110,000,

20   depending on such factors as the capacity of the establishment, the number of patrons

21   in attendance, and whether a cover charge was required for entrance."  Albright,

22   2013 WL 2449500 at *6.  Courts have also considered whether the defendant previously

23   violated anti-piracy laws.  Id.

24        Plaintiff requests statutory damages of $5,000 pursuant to § 605(e)(3)(C)(i)(II) and

25   enhanced statutory damages of $20,000 pursuant to § 605(e)(3)(C)(ii).  The Court will

26   award $2,000 in statutory damages and no enhanced statutory damages.  Although

27   Defendant showed the Fight on five of seven televisions and there were between fifty-

28   seven and sixty-four patrons at the establishment, there is no evidence that Defendant

1   charged a cover charge for entrance, increased food or beverage prices during the

2   Fight, or previously violated either § 553 or § 605.  Plaintiff has not established that

3   enhanced statutory damages are warranted.  Accordingly, the Court finds an award of

4   $2,000 in statutory damages appropriate.  See Albright, 2013 WL 2449500, at *7

5   (awarding $1,000 in statutory damages and no enhanced statutory damages under

6   similar factual circumstances).

7                 **2.  Second Cause of Action:  47 U.S.C. § 553**

8        "A signal pirate violates section 553 if he intercepts a cable signal, [and] he

9   violates section 605 if he intercepts a satellite broadcast.  But he cannot violate both by

10  a single act of interception."  J & J Sports Prods., Inc. v. Manzano, No. C-08-01872

11  RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).  Here, the undisputed

12  evidence indicates that Defendant intercepted a satellite broadcast, not a cable signal;

13  that is a violation of § 605, not § 553.  Accordingly, Plaintiff's Motion is DENIED to the

14  extent it seeks summary judgment on the second cause of action.

15                 **3.  Third Cause of Action:  Conversion**

16                 **a.  Entitlement to Summary Judgment**

17       Plaintiff's third cause of action is a conversion claim.  To establish conversion, a

18  plaintiff must show:  (1) plaintiffs' ownership or right to possession of the property at the

19  time of the conversion; (2) defendants' conversion by a wrongful act or disposition of

20  plaintiffs' property rights; and (3) damages.  Tyrone Pac. Intern., Inc. v. MV Eurychili,

21  658 F.2d 664, 666 (9th Cir. 1981).  Because conversion is a strict liability claim, a

22  defendant's "good faith, lack of knowledge, motive, or intent are not relevant" in

23  establishing a claim for conversion.  Albright, 2013 WL 2449500 at *8.

24       As to the first element, the "right to distribute programming via satellite" is

25  recognized as a "right to possession of personal property" for purposes of a conversion

26  claim under California law.  DirecTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189-90

27  (E.D. Cal. Dec. 12, 2005) (granting plaintiff summary judgment on its conversion claim

28  after recognizing the right to distribute as a right to possession of the property).  Here,

1   Plaintiff has established its right to distribute the Fight in establishments such as

2   Defendant's.  Pl.'s Decl. (Ex. 1), ECF No. 11, at 1-19.  Plaintiff has thus sufficiently

3   established its property interest at the time of the conversion.

4          Defendant counters that Plaintiff did not have the right to distribute the Fight in

5   Defendant's establishment because (1) Plaintiff's distribution rights extended only to

6   commercial establishments and (2) Defendant is a "members-only non-profit private

7   charitable organization."  Def.'s Mot., ECF No. 19 at 4.  Defendant made the same

8   argument in a prior motion, and the Court rejected that argument.  See ECF No. 16 at 5.

9   Defendant has not provided the Court with any argument undermining the Court's

10  reasoning in the previous Order or otherwise established a genuine issue of material fact

11  as to the first element of Plaintiff's conversion clam.  Plaintiff's property interest included

12  the right to distribute to Defendant's establishment.

13         As to the second element of conversion, there is no dispute that Defendant

14  showed the Fight without Plaintiff's authorization.  The undisputed facts are sufficient to

15  establish Defendant's conversion of Plaintiff's property right by a wrongful act.  See

16  Pahnke, 405 F. Supp. 2d at 1189-90 (concluding that lack of plaintiff's authorization was

17  sufficient to show that defendant misappropriated plaintiff's property rights).

18         Plaintiff has also established damages, the third element of its conversion claim.

19  Specifically, the undisputed evidence indicates that Defendant deprived Plaintiff of the

20  commercial license fee to which Plaintiff was rightfully entitled to receive.

21         There being no genuine issue of material fact as to any element of conversion,

22  Plaintiff's Motion is GRANTED to the extent it seeks summary judgment on the third

23  cause of action.

24                          **b.  Damages for Conversion**

25         Plaintiff may recover as damages the value of the property at the time of the

26  conversion.  Cal. Civ. Code § 3336; Krueger v. Bank of Am., 145 Cal. App. 3d 204, 215

27  (2nd Cir. 1983).  Plaintiff argues that it is entitled to $1,600 in damages for the

28  conversion, as that is the amount that Defendant would have had to pay to broadcast the

1  Fight lawfully.  That figure is based on the investigator's estimate that Defendant's

2  establishment has a capacity of 200 and the "rate card" for the Fight.  Pl.'s Statement of

3  Undisputed Facts (No. 8), ECF No. 20-1 (citing the rate card and the investigator's

4  affidavit); See Hokada Aff., ECF No. 20-2, at 3; Def.'s Mot. (Ex. 3), ECF No. 19-3 (the

5  rate card).  Plaintiff has carried its burden with respect to the amount of damages for the

6  conversion claim.

7       Defendant counters that the maximum capacity of its establishment is "between

8  80-100," and that the value of the property at the time of the conversion (according to

9  Plaintiff's rate card) is therefore only $950.  Def.'s Resp. to Pl.'s Statement of Undisputed

10 Facts, ECF No. 23-1, at 2.  But the only evidence that Defendant cites in support of that

11 assertion is "the headcounts of plaintiff's investigator as well as the photographs . . . ."

12 Id.

13      Defendant's evidence is insufficient to create a triable issue.  First, Defendant

14 seems to agree that Plaintiff's rate card—which provides licensing fees based solely on

15 the "Fire Code Occupancy" of the establishment—determines the value of the Fight for

16 purposes of conversion.  Id.  Second, the evidence that Defendant relies on—

17 headcounts and photographs—does not corroborate its claim that its establishment is

18 "between 80-100."  Again, the only variable on the rate card is the "Fire Code

19 Occupancy" of the establishment; the investigator's head count (i.e., the number of

20 patrons actually present during Defendant's showing of the Fight) is entirely irrelevant for

21 purposes of determining the value of the Fight under the rate card.  Defendant fails to

22 appreciate that the investigator that took the head count also estimated a capacity of

23 200.  Moreover, Defendant's reference to unspecified "photographs" lacks the

24 particularity that Rule 56 requires to establish the existence of a genuine factual dispute.

25 See Fed. R. Civ. P. 56(c)(1).  Lastly, the photographs attached to the investigator's

26 affidavit—all of which capture the exterior of the building—do not undermine the

27 investigator's estimates, corroborate Defendant's estimation of "between 80-100," or

28 otherwise create a genuine issue of material fact.

1    Defendant further argues that allowing damages for both Plaintiff's § 605 claim

2    and its conversion claim would result in impermissible duplicative recovery.  Some courts

3    in this circuit generally award damages under both the statutory claim and for

4    conversion, although other districts have taken the opposite approach.  Albright, 2013

5    WL 2449500 at *9; Compare J & J Sports Prod., Inc. v. Paolilli, 1:11-CV-680 LJO GSA,

6    2011 WL 6211905, at *3-4 (E.D. Cal. Dec. 14, 2011) (awarding damages for both § 605

7    and conversion claims), with J & J Sports Prods., Inc. v. J.R. 'Z Neighborhood Sports

8    Grille, Inc., 2:0903141 DCN RSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010)

9    (denying plaintiff's claim for recovery for conversion after awarding damages under

10   § 605).  To avoid impermissible duplicative recovery, the Court did not consider the

11   value of Defendant's unauthorized showing of the Fight when determining the

12   appropriate statutory damages under § 605.  Accordingly, the Court's award of $1,600 in

13   conversion damages is not duplicative.

14       **B.  Defendant's Motion for Summary Judgment**

15   Defendant raises several arguments in its Motion, some of which the Court has

16   already addressed in evaluating the merits of Plaintiff's Motion for Summary Judgment.

17   The remainder of this Order addresses only those arguments that the Court has not

18   already examined.

19       **1.  Standing**

20   Defendant argues that Plaintiff lacks standing because Plaintiff does not have

21   distribution rights to a "members-only non-profit private charitable organization" such as

22   Defendant's establishment.  Def.'s Mot., ECF No. 19 at 4.  Defendant advanced the

23   same argument in its Motion for Judgment on the Pleadings (ECF No. 8), and the Court

24   rejected that argument (ECF No. 16).  Defendant has failed to provide any argument to

25   justify a deviation from the Court's previous order or otherwise establish that Plaintiff

26   lacks standing.  Thus, Defendant is not entitled to summary judgment on the ground that

27   Plaintiff lacks standing.

28   ///

1

        **2.  Evidence of the type of signal intercepted under § 605**

2          Defendant argues that "it is necessary for the [P]laintiff to establish the type of

3   signal that was allegedly intercepted to prevail in its case."  Def.'s Mot., ECF No. 19, at

4   9.  Defendant's argument is inconsistent with the applicable and binding case law.  The

5   Ninth Circuit has made clear a plaintiff may rely on "circumstantial evidence to prove

6   unlawful interception."  Webb, 545 F.3d at 844.  As the Court has already explained, the

7   lack of Plaintiff's authorization and Defendant's satellite service—facts which Defendant

8   does not dispute—are sufficient to establish that the Fight was intercepted via satellite

9   service.  See Albright, 2013 WL 2449500 at *5.  Id.  Thus, Defendant is not entitled to

10  summary judgment on the ground that Plaintiff failed to establish the type of signal

11  intercepted.

12         Accordingly, Defendant's Motion is for Summary Judgment is DENIED.

13

14                              **CONCLUSION**

15

16         Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED.

17         Plaintiff's Motion for Summary Judgment (ECF No. 20) is GRANTED in part and

18  DENIED in part as follows:

19         1.  Plaintiff's Motion is GRANTED as to the first cause of action (violation of

20  47 U.S.C. § 605); Plaintiff is awarded $2,000 in statutory damages and no enhanced

21  statutory damages for that claim.

22         2.  Plaintiff's Motion is DENIED as to the second cause of action (violation of

23  47 U.S.C. § 553).

24         3.  Plaintiff's Motion is GRANTED as to the third cause of action (conversion), and

25  Plaintiff is awarded $1,600 in damages for that claim.

26  ///

27  ///

28  ///

                                        11

1    Plaintiff did not seek summary judgment on the fourth cause of action.  Within

2   fourteen (14) days of the date this Order is electronically filed, Plaintiff shall inform the

3   Court whether it will proceed on the fourth cause of action or seek dismissal of that claim

4   and request that this case be closed.  If no notice is received with said fourteen (14) day

5   period, this case will be closed without any further notice to the parties.

6    IT IS SO ORDERED.

7   Dated:  February 10, 2016

8

9

10   _____

11   MORRISON C. ENGLAND, JR, CHIEF JUDGE
     UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28